MINNA RIEPER, Appellee, v. MATTIE BERNER et al., Appellants.

No. 43769.

FEBRUARY 16, 1937.

Carr & Kempter and F. H. Schwirtz, for appellants.

Ben F. Martinsen, for appellee.

MITCHELL, J.—Minna Rieper commenced this action in equity, seeking judgment on a $6,000 note, and for the foreclosure of a certain real estate mortgage against Mattie Berner and Albert H. Berner. The only defense raised was the allegation that the signatures on the note and mortgage were forgeries. After listening to the evidence the lower court entered judgment as prayed. The Berners were dissatisfied and have appealed.

The evidence shows that the Berners were indebted to the Caroline Schoenhite estate on a note and mortgage. Minna Rieper was a sister of Caroline Schoenhite and the executrix of her last will and testament, and, except for a small bequest to

her daughter, Minna Rieper was the beneficiary of the estate and entitled to all of the property.

The attorney for the Schoenhite estate testified that he requested payment of the indebtedness to the estate, but that the appellants were unable to pay at the time, and as a result thereof the note and mortgage sued upon were executed to Minna Rieper.

There is but one question that confronts us in this case, and that is whether or not the signatures of Mattie Berner and Albert H. Berner to the note and mortgage are forgeries. Let us turn to the record to ascertain the facts.

C. W. Root, who was the attorney for the Schoenhite estate, and also a notary public, swears that the note and mortgage were signed in his presence by Mattie Berner and Albert H. Berner. There is the testimony of two bankers in Clinton, familiar with the signatures of these parties, that the signatures on the note and mortgage are genuine. There is the testimony of an expert produced by appellee, who testifies the signatures are those of the appellants. Opposed to this is the testimony of an expert produced by appellants that the signatures are forgeries. It is interesting to note the positiveness of these two experts; how, under the system each one uses, no possible mistake could be made, and yet, there is a direct conflict in their testimony. The one says the signatures are not forgeries and the other says they are. Mattie Berner and Albert H. Berner both swear that they did not sign the note and mortgage and that the signatures attached were not their signatures. They were both quite positive in their direct examination that the signatures were forgeries. We quote from the testimony of Mrs. Berner:

"Q. Mrs. Berner, you feel you are very familiar with your own signature? A. Yes, sir.

"Q. And you think that you would be able to recognize your own signature? A. I think so, yes.

"Q. Positively? A. Yes.

"Q. So that if you looked at the signature which purported to be yours, you feel you could state positively whether it was your handwriting or not? A. Yes, I think I could."

And yet, this positive ability to recognize her own signature soon withered into the following illustrative testimony:

"Q. Mrs. Berner, I will show you Plaintiff's Exhibit K,

which bears an indorsement, and ask you to look at that indorsement on the back of that and ask you whether that is your signature?

"Mr. Schwirtz (one of the attorneys representing Mrs. Berner): If your Honor please, these Exhibits K and L were introduced here specifically, without objection, as being the authentic signatures of this defendant.

"The Court: And what about it?

"Mr. Schwirtz: Well, it seems to me a little idle time to go over that again.

"The Court: She may answer, subject to the objection.

"A. No, I have no recollection of ever signing them.

"Q. You have no recollection of ever signing them? A. No.

"Q. Then you would say that is not your signature? A. It doesn't look like my signature.

"Q. And you don't recall signing that? A. I don't recall it.

"Q. Well, now, Mrs. Berner, I will ask you to look at Plaintiff's Exhibit L and to examine the indorsement on the back thereof and ask whether that is your signature? A. It doesn't look like my signature; it does not look like mine.

"Q. And you do not recall ever having signed that? A. It doesn't look very much like my signature.

"The Court: She says it does or does not?

"Q. She says it doesn't look very much like it. You don't remember ever having signed this piece of paper? A. Well, I may have but it was some time ago.

"Q. But you would say that those are not your signatures? A. They may not be; they don't look—they may be but they do not look very much like my signature.

"Q. Then you are not really positive? A. Not on those.

"Q. Didn't you state to me previously you could positively identify your signature, Mrs. Berner? A. Yes, I can, but that doesn't look very much like my signature."

From this testimony it is clear that Mrs. Berner could not positively identify her own signature, for it had been admitted that the exhibits which she was examining at the time of this cross examination, contained her signature. This is all of the testimony that was offered by the appellants. It was conceded that the appellants had paid interest to Minna Rieper for a

matter of almost four years. It is true, they testified that they thought they were paying interest on the Caroline Schoenhite note, but the evidence showed that they knew Caroline Schoenhite had been dead for some years.

This case is primarily a question of fact. The distinguished and able trial court had the witnesses before him. While the case is triable de novo here, where there is a conflict between witnesses we must of necessity give great weight to the finding of the trial court. We are convinced that he was right, and it therefore follows that the decree and judgment of the lower court must be, and it is hereby, affirmed.—Affirmed.

Chief Justice and all Justices concur.